**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                                          Case No. 04-80098-DHW
                                                                                      Chapter 7
3-D CASH & CARRY, INC.

    Debtor.

**ORDER ON ATTORNEY'S APPLICATION
FOR COMPENSATION AND EXPENSE**

Charles M. Ingrum, Sr. filed an application on July 11, 2005 for compensation in the amount of $45,655.13 and reimbursement of expenses in the amount of $1,556.22 for services performed as attorney for 3-D Cash & Carry, Inc. ("debtor" or "3-D") during the period January 14, 2004 to June 27, 2005. The application was taken under advisement following an August 8, 2005 hearing and has been in that posture ever since.[1]

Factual and Procedural Background

The debtor filed this case under chapter 11 on January 28, 2004. After early attempts to reorganize proved futile, the debtor began the process of liquidation. In May 2004, the debtors filed an application to employ a liquidator to sell the debtor's inventory, equipment and unattached fixtures.

The debtor also began efforts to market the realty on which the debtor is located. The debtor forestalled SouthTrust Bank from foreclosing on the realty with evidence of equity in the property. In order to allow the debtor additional time to sell the real property, the

---

[1] A decision on the application was delayed when Jeffrey Lamar Davis filed an objection to the application and a motion to amend an order approving the sale of estate property. The motion affected monies held in Ingrum's trust account for payment of professional fees. An order on the motion entered January 13, 2006. *See Order and Memorandum Opinion* (Doc. #330 and #329).

court granted SouthTrust Bank relief from the stay effective December 31, 2004. The debtor filed an application on June 24, 2004 to employ a real estate broker. In September 2004, The debtor filed an application to employ a different realtor.

In the meantime, the debtor filed a plan and disclosure statement on May 26, 2004. The plan and disclosure statement were conditionally approved on June 15, 2004. The debtor amended the plan and disclosure statement in June 2004. After objection by a creditor, the court vacated conditional approval of the disclosure statement, and the debtor filed a new disclosure statement and plan on July 26, 2004. The new disclosure statement was set for hearing on October 18, 2004.

The hearing on the disclosure statement was continued to December 13, 2004. In the meantime, the debtor again amended the disclosure statement in November 2004.

The debtor filed a motion to continue the hearing on the disclosure statement pending resolution of the issues in an adversary proceeding commenced by SouthTrust Bank (Adv. Proc. No. 04-8005). In that proceeding, the bank sought a determination that a residential subdivision previously owned by the debtor secured all loans to the debtor by virtue of a dragnet clause in the mortgage.

The purchase of the subdivision had been "run through" the debtor corporation on behalf of the father of the debtor's president. The father had operated the business before his son.

Ingrum took the position in the adversary proceeding on behalf of the debtor that the dragnet clause did not render the subdivision collateral for the debtor's debts to the bank. This position was not in the debtor's best interest because foreclosure of the subdivision would reduce the amount of the debtor's debt to the bank. The court ultimately ruled in favor of the bank on December 14, 2004.

On December 6, 2004, the debtor filed an emergency motion to obtain credit to exercise an option to purchase a small tract of realty owned by Davco, Inc. on which the debtor's store was partially situated.

The Bank of Wedowee had agreed to finance the purchase in exchange for a mortgage on the property. The debtor had purchased the option on June 24, 2004. The option would expire on December 31, 2004. The purchase of the tract of land would consolidate in the debtor all of the realty on which the debtor operated its business. The motion was set for hearing on December 23, 2004.

On December 7, 2004, SouthTrust Bank filed an emergency motion to appoint a trustee. The bank was understandably concerned with the effect of the debtor's failure to exercise the option on the estate's ability to sell the realty. The bank requested the court to appoint a trustee in the event that the debtor failed to exercise the option on or before December 17, 2004. The court set the motion for hearing on December 23, 2004.

At the hearing on December 23, 2004, the court granted the debtor's motion to obtain credit, and the debtor exercised the option to purchase the tract of land before the option expired. SouthTrust Bank withdrew the motion for appointment of a trustee.

The hearing on the disclosure statement and plan was continued to February 14, 2005 and then again to April 4, 2005 and then again to June 6, 2005.

On June 6, 2005, the debtor filed a motion to sell the commercial realty free and clear of liens. A hearing on the motion was held June 20, 2005, and an order approving the sale entered June 28, 2005. The sale order was amended by agreement of the parties on July 7, 2005.

The order approved the sale of the realty for $820,000 and contained a break-down for distribution of the sale proceeds, including the payment of taxes, survey and title work, real estate broker commission, and payment of creditors with liens on the property.

The consensual lien creditors agreed to a $42,000 carve-out of their interest in the proceeds for professional fees. This money was paid to Charles Ingrum in trust as the "Professional Fee Reserve."

From this money, Ingrum allegedly distributed $6,750 to the debtor's accountant, presumably Lex Walton, Jr., whose fees were approved in the amount of $6,750, leaving $35,250 in the reserve trust account.

Ingrum filed the instant fee application on July 11, 2005 which was set for hearing on August 8, 2005.

Before the hearing, Ingrum filed a motion on behalf of the debtor to dismiss or convert the chapter 11 case to a case under chapter 7. The motion was predicated on the alleged completed administration of the estate and the absence of any assets for distribution to unsecured creditors.

At the hearing on the motion, the court concluded that conversion would be in the best interest of the estate. An order entered converting the case to chapter 7 on September 22, 2005.

Meanwhile, Jeffrey Davis, principal of the debtor, filed an objection to award of an attorney's fee to Ingrum. Davis asserted that some tax liens were due to be paid from the sale proceeds that had not been satisfied. Davis also moved to amend the sale order to provide for payment of the liens from the sale proceeds. The motion was met with objections.

At the hearing on the motion, Jeffrey Davis asserted that there was only one outstanding tax lien due to be satisfied from the proceeds of the sale. The lien was held by the State of Alabama in the amount of $7,833.72 for unpaid employment taxes.

The court took the motion under advisement following the hearing. The court ruled that the lien was due to be paid from the unencumbered sale proceeds because the order approving the sale provided that outstanding liens would attach to the sale proceeds. The court required Ingrum to satisfy the lien from the unencumbered funds in his possession, namely the professional fee reserve.

Ingrum paid the money to the State of Alabama and filed a

certificate of payment with the court. Following payment of the state tax lien, Ingrum was left with $27,416.28 in the professional fee reserve trust account.

Ingrum has informed the court that the State of Alabama returned the $7,833.72 paid by Ingrum to satisfy the tax lien. Apparently the underlying employment taxes had been paid, but the lien had not been marked satisfied. It is not a matter of record when or by whom the tax lien was satisfied. If the tax lien was satisfied by a title insurance company, there may be a subrogation claim to the funds.

## Consideration of Fee Application

A short history of this chapter 11 turned chapter 7 case was necessary as a backdrop to proper consideration of Ingrum's fee application. The court has concerns that impact on the allowance of the requested fee by counsel for the debtor.

First, the court has concerns whether some of the services for which the fee is requested were either reasonable or necessary for the benefit of the estate. For instance, Ingrum took a position contrary to the best interest of the estate in the adversary proceeding with SouthTrust Bank. The position taken by Ingrum benefitted the father of the principal and perhaps the principal but not the debtor corporation. Ingrum's fee itemization reflects time spent regarding the subdivision legal issues which both predate and postdate the petition date. How did Ingrum's services benefit the estate?

Second, it appears that counsel spent unnecessary time performing inconsistent legal services. This case ran on a parallel track of multiple sales under 11 U.S.C. § 363 and confirmation. During that time, Ingrum performed services designed to facilitate both. Ingrum filed a plan which was amended twice and a disclosure statement which was amended thrice. Ingrum later filed a motion to suspend the confirmation process pending resolution of the issues involved in the adversary proceeding with SouthTrust Bank. How did these parallel services benefit the estate?

Third, the debtor was dilatory in exercising the option to purchase

the property from Davco, Inc. The delay necessitated a motion to appoint a trustee and hampered the debtor's ability to sell the property for several months, thereby impeding the administration of the case in chapter 11.

Fourth, many of the entries in the fee itemization lack the specificity necessary to enable this court to make an informed analysis regarding allowance of the requested fee for those services.

## Conclusion

Upon consideration of the above, the court concludes that $27,416.28 is a reasonable fee and expense reimbursement for the services performed by counsel for the debtor. Accordingly, it is

ORDERED that Charles M. Ingrum, Sr., is AWARDED a fee in the amount of $25,860.06 and reimbursement of expenses in the amount of $1,556.22.

Money paid to Ingrum in excess of this amount, including any prepetition retainer, shall be remitted to the chapter 7 trustee.

Done this 2nd day of February, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Court

c: Debtor
Charles M. Ingrum, Sr., Attorney for Debtor
Teresa R. Jacobs, Bankruptcy Administrator